2024 IL App (1st) 232315

SIXTH DIVISION
February 22, 2024

No. 1-23-2315B

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2023CR05346 |
| VERONICA CASTILLO | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Judge Margaret M. Ogarek |
| | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant Veronica Castillo appeals the circuit court's order continuing her pretrial detention pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), and Public Act 102-1104, § 70 (eff. Jan 1, 2023) (commonly referred to as the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act" (Act)). On appeal, she argues that the State failed to

demonstrate through clear and convincing evidence that: (1) no condition or combination of conditions could protect the community from any real and present threat posed by her release, and (2) there were no conditions of release that would reasonably ensure her appearance. For the following reasons, we reverse and remand for new proceedings, at which the circuit court shall determine whether Castillo should remain detained based on the specific, articulable facts of the case.

¶ 2                                    BACKGROUND

¶ 3    Castillo was arrested on April 15, 2023, and charged with one count each of home invasion (720 ILCS 5/19-6(a)(2)) (West 2022)), battery (*id.* § 12-3(a)(1)), and child endangerment (*id.* § 12C-5(a)(1)). The State amended their charges, replacing the battery charge with criminal damage to property (*id.* § 21-1(a)(1)). The circuit court initially denied Castillo bail on April 16, 2023. Following enactment of the Act on September 18, 2023, counsel for Castillo filed a petition to grant pretrial release on November 15, 2023. The State then filed a petition for a pretrial detention hearing on November 29, 2023. The circuit court held a hearing on both petitions on December 6, 2023.

¶ 4    Counsel for Castillo proffered that she is a lifelong resident of Cook County who graduated high school and received a nursing assistant certificate from Job Corps. Castillo has three children, one with developmental delays, and all are currently in her mother's care since she has been detained. While in detainment, Castillo has participated in numerous programs to make positive changes to herself, including group therapy, substance abuse treatment, and parenting classes. Counsel noted that Castillo secured in-patient treatment at the Haymarket Treatment Center (Haymarket), and upon release, Castillo would transfer to Haymarket to continue treatment. Counsel suggested that Castillo be placed under electronic home monitoring (EHM) at Haymarket,

with no movement from that location until her bond is addressed or her treatment at Haymarket is complete. Should treatment go well at Haymarket, counsel suggested releasing Castillo to her mother's home. Counsel stated that Castillo understands that she is not to contact the victims of the April 15, 2023 incident, and she only seeks the opportunity to continue improving herself while being able to spend more time with her children.

¶ 5    The State proffered that around 6:30 a.m. on April 15, 2023, Castillo, along with two male codefendants, went to the home of Herman Lopez to drop off their shared child. At the time, Lopez was sleeping with his current girlfriend, Olga Gelacio, when they heard loud knocking at the front door. When Lopez opened the door, Castillo began yelling at him. Lopez then closed the door yet opened it later to retrieve his child. Upon reopening the door, Castillo saw Gelacio, ran into the home, and lunged at her. The other codefendants then entered the home and attacked Lopez and Gelacio. Lopez chased the codefendants out of the home with a knife, restrained Castillo, and told Gelacio to call 911.

¶ 6    As Gelacio called 911, the codefendants picked up bricks and threw them into the home's windows. The codefendants then kicked down the front door and reentered the home. Lopez chased away the defendants, who fled in a green Buick. When officers stopped the Buick, the victims identified the defendants as the attackers. Police then arrested the defendants. At the stop, officers noticed Castillo's son in the back seat.

¶ 7    Regarding Castillo's background, the State proffered that while Castillo had no prior convictions, she was arrested twice for domestic battery against Lopez. Counsel for Castillo noted the State dropped both domestic battery charges. In addition, counsel for Castillo noted that she had prior orders of protection against Lopez before those arrests. Counsel for Castillo also noted

that pretrial services gave her a score of one and one for new criminal activity and failure to appear, respectively.

¶ 8    The circuit court granted the State's petition for pretrial detention, finding the State established via clear and convincing evidence that Castillo committed a forcible felony in home invasion, she presented a real and present danger to the victims, and there were no conditions or combination of conditions that would mitigate the danger or her willful flight. The court stated, "the current condition, which is detention, is necessary to ensure the appearance of the defendant and the safety of the persons involved in the case, specifically [the victims]." The court continued, "[the court finds that Castillo] poses a real and present threat to the safety of [the victims] and no combination of conditions, including [EHM] at Haymarket and ultimately to her mother's address, will provide for their safety."

¶ 9    In the order denying pretrial release, the judge stated that less restrictive conditions would not avoid a real and present danger to the safety of any person or persons or the community because: (1) the victims initially closed the door on Castillo, but she barged in and escalated the event; (2) Castillo has two prior domestic battery arrests upon Lopez and that they share a child; and (3) on the date of the incident, despite the presence of a minor, Castillo attacked the victims. Furthermore, the judge stated that no condition or combination of conditions can mitigate Castillo's willful flight because she fled the location of attack and was apprehended by police.

¶ 10    On December 8, 2023, Castillo filed her notice of appeal and checked a box stating that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight. Castillo claimed that the State did not make any arguments that there are no conditions that

4

could mitigate the real and present threat and that counsel for Castillo presented an alternative in EHM that would prohibit her from leaving Haymarket's facility. In addition, Castillo checked a box stating that the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure her appearance for later hearings or prevent her from being charged with a subsequent felony or Class A misdemeanor. Castillo claimed the court did not consider whether EHM placement and release to Haymarket would assure her appearance and prevent new charges. She also pointed to the one and one pretrial scores, along with her zero prior criminal convictions and zero failures to appear at court proceedings.

¶ 11                                    JURISDICTION

¶ 12    Castillo appeals from the circuit court's order of December 6, 2023. She filed this notice of appeal on December 8, 2023, and thus the notice was timely, and this court has jurisdiction pursuant to the Code. See 725 ILCS 5/110-6.1(j), 110-6.6 (West 2022); Ill. S. Ct. R. 604(h) (eff. Dec. 7, 2023).

¶ 13                                      ANALYSIS

¶ 14    On appeal, Castillo first argues the State failed to meet its burden to show there were no conditions or combination of conditions that would mitigate her real and present threat to the safety of the victims. She next argues the circuit court erred in determining there were no conditions to ensure her appearance or prevent her from being charged with a subsequent crime because it did not consider EHM placement at Haymarket, her pretrial scores or lack of a prior record.

¶ 15    Under the Code, all persons charged with an offense shall be eligible for pretrial release before conviction. 725 ILCS 5/110-2(a) (West 2022). Pretrial release may be denied upon a verified petition by the State and following a hearing. *Id.* § 6.1(a). At the hearing, the State bears the burden of proving by clear and convincing evidence that: (1) the defendant committed an

5

offense listed in the statute; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat or the defendant's willful flight. *Id.* § 6.1(e). If the circuit court determines that the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying pretrial release. *Id.* § 6.1(h)(1).

¶ 16    Appellate decisions conflict as to the precise standard of review to apply to pretrial release orders of the circuit court. In *People v. Romero*, 2024 IL App (1st) 232023-U, ¶ 31-32, another panel of this court details this disagreement, where some courts hold that review is fully subject to the abuse of discretion standard, some courts hold that it is subject to the "manifest weight of the evidence" standard, and others hold that review is "twofold," where the circuit court's factual findings are reviewed under the "manifest weight of the evidence" standard, yet the ultimate determination for pretrial release is reviewed for an abuse of discretion. See *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 17    We find the "twofold" approach in *Trottier* is well reasoned. The circuit court's factual findings regarding whether the State presented clear and convincing evidence that mandatory conditions of release would fail to protect any person or the community or the defendant has a high likelihood of willful flight to avoid prosecution is reviewed under the manifest weight of the evidence standard. *Id.* A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *People v. Krisik*, 2018 IL App (1st) 161265, ¶ 53 (citing *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)).

¶ 18    The circuit court's ultimate determination regarding pretrial release is reviewed under the abuse of discretion standard. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs where the circuit court's decision is arbitrary, unreasonable, or fanciful or where no reasonable person would have taken the position adopted by the circuit court. *People v. Heineman*, 2023 IL 127854, ¶ 59. In reviewing a circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court unless no reasonable person would take the view adopted by the court. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15.

¶ 19    The State first claims Castillo's argument that the State did not prove no conditions could mitigate the risk of her willful flight is forfeited. The State points to *People v. Clark*, 2023 IL App (5th) 230878-U, where the Fifth District ruled a defendant's claim in his notice of appeal was forfeited when he checked a box on the notice of appeal form to assert a claim that the state failed to meet its burden but did not provide any elaboration, reference to the record, or cite any authority in support of his claim.

¶ 20    It is reasonable to conclude that by approving the pretrial release notice of appeal form, the Illinois Supreme Court expects appellants to at least include some rudimentary facts, argument, or support for the conclusory claim they have identified by checking a box. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. We find Castillo did not forfeit her argument that the State did not prove no conditions could mitigate her willful flight. The State likens Castillo's notice of appeal to the one presented in *Clark*, but Castillo presents an explanation to support her claims that the State did not present clear and convincing evidence. In *Clark*, the court noted while the defendant claimed "the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed [reckless discharge of a firearm]," the defendant did not provide any further explanation to support his claim. *Clark*, 2023

7

IL App (5th) 230878-U, ¶ 6. Here, Castillo checked the box on her notice of appeal form claiming "the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or the defendant's willful flight." She explained that pretrial release would only be to Haymarket, and she would be under EHM and be prohibited from leaving the facility. This explanation addresses both how less restrictive conditions could possibly mitigate her threat to the victims and prevent her willful flight from prosecution.

¶ 21    Turning to Castillo's claims, she first argues the State did not prove by clear and convincing evidence there were no condition or combination of conditions that would mitigate the real and present threat to the victims' safety, even though her counsel presented an alternative in EHM at Haymarket. As such, denial of pretrial release was improper.

¶ 22    In response, the State argues the record provides ample support for the circuit court's denial of pretrial release. The State asserts their proffer included Castillo's prior domestic battery arrests that involved Lopez. Moreover, the circuit court considered and rejected Castillo's request for EHM at Haymarket after considering the nature and circumstances of the crime and her prior arrests. The State also claims Castillo's argument that the State did not argue no condition or combination of conditions could mitigate her threat to the victims is unavailing, citing *People v. Perez*, 2024 IL App (2d) 230416-U, ¶ 29.

¶ 23    Under the Code, the State must show by "clear and convincing evidence" that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the defendant's willful flight. 725 ILCS 5/110-6.1(e)(3) (West 2022). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the

8

fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12.

¶ 24 In finding no condition or combination of conditions could mitigate the threat to the victims, the circuit court considered that after Lopez reopened the door, Castillo escalated the incident by running in and attacking Gelacio, and Castillo and Lopez's child was in the car during the incident. The court also noted Castillo's prior domestic battery arrests upon Lopez.

¶ 25 We find the circuit court's finding that no mitigating conditions existed was against the manifest weight of the evidence because the State's evidence did not address whether EHM, or any other less restrictive condition, could mitigate Castillo's threat to the safety of any person or persons or the community or her willful flight. The State's proffer provided that Castillo committed a forcible felony and presented a real and present threat to the victims, but no mention of whether less restrictive conditions of release would mitigate her threat to the victims or her willful flight. The State bears the burden of proving by clear and convincing evidence that no condition could mitigate the defendant's threat or their willful flight under section 110-6.1(e)(3) of the Code.

¶ 26 *People v. Stock*, 2023 IL App (1st) 231753, is illustrative on this point. There, another panel of this court ruled the circuit court's finding that there were no conditions to mitigate the defendant's threat was against the manifest weight of the evidence. At the pretrial detention hearing, the State made a factual proffer detailing the events of the incident. *Id.* ¶ 5. On appeal, the court noted the factual proffer from the State was insufficient to show that no conditions could mitigate the threat posed by the defendant. *Id.* ¶ 18. In so finding, the *Stock* court stated, "If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish [that no conditions could mitigate the threat posed], then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.*

¶ 27 Here, Castillo does not contest that she was charged with a forcible felony in home invasion, or she poses a real and present danger to the victims. Instead, she argues EHM at Haymarket and, eventually, her mother's home is a less restrictive condition that could mitigate her danger or willful flight. It is the State's burden to prove there are no conditions that could mitigate the danger to the victims or Castillo's willful flight, a burden the State failed to meet by only relying on the factual proffer and Castillo's prior domestic battery arrests, which, as *Stock* explained, is insufficient. *Id.* ¶ 19 (the circuit court cannot infer on behalf of the State that there is no conceivable condition or combination of conditions that could mitigate the threat).

¶ 28 The State argues that under *Perez*, 2024 IL App (2d) 230416-U, they can rely on the police synopsis and defendant's history to assert their claim. This argument fails because the evidence presented must still meet their burden for all the elements under the statute. In *Perez*, the State relied on the police synopsis that detailed the defendant stating he wanted to kill the victim and "Hispanics" as evidence pertaining to his dangerousness to the community. *Id.* ¶ 10. The circuit court, however, did not rely on the police synopsis alone to determine that lesser conditions would not mitigate the defendant's threat or his willful flight. *Id.* ¶ 12. Instead, the court considered the defendant's behavior during the pretrial hearing, including his refusal to obey court orders, outbursts, and usage of slurs, to determine that because of his inability or unwillingness to control himself in court or follow court orders, lesser conditions would not assure safety or the defendant's appearance in court. *Id.* Conversely, the Court here relies on the State's proffer, which do not speak to Castillo's ability or willingness to control herself or obey court orders. Without additional evidence to support the claim that lesser conditions could not mitigate the threat to the victims or Castillo's willful flight, the State has not met their burden for all elements of the statute. As such, the circuit court's factual findings are against the manifest weight of the evidence.

10

¶ 29    We now turn to the ultimate determination of pretrial release, which we review for abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under the Code, if the circuit court orders detention, it must make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's flight from prosecution. 725 ILCS 5/110-6.1(h)(1) (West 2022). Failure of the circuit court to address these conditions falls short of the "clear legislative directive" for courts to address less restrictive conditions of release. *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23. By failing to address the conditions of release, in writing, a circuit court fails to "make a record adequate to allow meaningful review of its exercise of discretion." (Internal quotation marks omitted.) *Id.* ¶ 24.

¶ 30    In applying section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), several courts have contemplated what constitutes a sufficient written finding when the circuit court orders pretrial detention. In *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, the Second District held that an explicit and individualized oral ruling may satisfy the statute. In *Andino-Acosta*, the court considered Justice Boie's dissent in *People v. Odehnal*, 2024 IL App (5th) 230877-U, ¶ 18, where in denying pretrial release, the circuit court made detailed, fact-specific findings as to why pretrial release was denied. *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 16. In his dissent, Justice Boie referred to *In re Madison H.*, 215 Ill. 2d 364 (2005), where the Illinois Supreme Court considered a similar statute that required the circuit court to make a written finding for determining whether a parent is unfit to raise a child. The supreme court found that explicit oral findings stated during a hearing are sufficient for written findings after they are transcribed because they then provide an opportunity for review of their validity on appeal. *Odehnal*, 2024 IL App (5th) 230877-

U, ¶ 21 (citing *In re Madison H.*, 215 Ill. 2d at 372-75). The *Andino-Acosta* court ruled to assess the sufficiency of a trial court's findings under section 110-6.1 of the Code, the circuit court's written findings must be read in conjunction with its oral statements. *Adino-Acosta*, 2024 IL App (2d) 230463, ¶ 19.

¶ 31   While we agree with the court in *Andino-Acosta*, a circuit court must still provide an explanation of its consideration of less restrictive conditions in its verbal ruling as transcribed or in its written order. In *People v. Peralta*, 2023 IL App (1st) 231897-U, ¶ 13, a different panel of this court reviewed a pretrial detention order where the circuit court stated that less restrictive conditions would not mitigate the defendant's threat to the community or his willful flight because the defendant "fired multiple shots on a city street [due] to an altercation at a liquor store. His [pretrial services] score corresponds with a 3." (Internal quotation marks omitted.) The court found that the explanation fell short of the requirements of section 110-6.1 because the circuit court did not indicate that it considered or indicated why less restrictive conditions would not mitigate the threat. *Id.* The court remanded the matter to the circuit court and directed it to consider the possibility of less restrictive conditions and explain why such alternatives would or would not be effective. *Id.*

¶ 32   We find this matter similar to *Peralta* because the circuit court abused its discretion by not explaining why less restrictive conditions would not mitigate Castillo's threat to the victims or her willful flight in its oral statements or written order. At the pretrial release hearing, the judge stated that no combination of conditions, including EHM at Haymarket and ultimately Castillo's mother's address, would provide for the safety of the victims. The judge does not provide further explanation in the transcript of the hearing as to why no conditions would provide for the victims' safety. In the written order, the judge found that less restrictive conditions would not avoid the real

and present danger because "the victims initially closed the door on [Castillo], but [she] barged in and escalated the event. [Castillo] has two prior [domestic battery] arrests upon [Lopez], [and] they share a child. On this date despite the presence of [a] minor, [Castillo] attacked [the victims]." The court continued that less restrictive conditions would not prevent Castillo's willful flight because "[she] fled [the] location of attack and was apprehended by police."

¶ 33 While these factors stated in the order are certainly reasons why defendant is being charged and poses a risk of harm to a person or community, they do not indicate why lesser restrictions would not mitigate the danger or Castillo's willful flight. See *People v. Turner*, 2024 IL App (1st) 232082-U, ¶ 21. Castillo has zero criminal convictions, and the charges related to her prior domestic battery arrests were dropped. Pretrial services gave Castillo scores of one for new criminal activity and one for failure to appear. Castillo has participated in a series of treatment programs while detained to improve herself, including group therapy, substance abuse treatment, and parenting classes. Neither the oral statements from the transcript of the hearing or the written detention order explain why less restrictive conditions would not mitigate Castillo's threat to the victims or her willful flight, as required under the Code. *Martin*, 2023 IL App (4th) 230826, ¶ 23.

¶ 34 In assessing both the oral statements and written order, the circuit court did not explain its reasons why less restrictive conditions to Castillo's pretrial release would not mitigate the real and present threat to the victims or her willful flight. As such, we conclude that its denial of pretrial release was an abuse of discretion. Accordingly, we remand this matter to the circuit court for compliance with the Act, specifically to consider alternatives to detention, including "zero

tolerance" EHM at Haymarket and eventually Castillo's mother's home, and explain why these alternatives will or will not mitigate her threat to the victims or her willful flight.[1]

¶ 35                                CONCLUSION

¶ 36   For the foregoing reasons, we reverse the circuit court's pretrial detention order and remand for further proceedings consistent with this opinion.

¶ 37   Reversed and remanded.

---

[1]We do not consider Castillo's other argument that that the circuit court erred in determining that no condition or combination of conditions would reasonably ensure her appearance for later hearings or prevent being charged with a subsequent felony. Under the Code, when a defendant has previously been granted pretrial release, it may be revoked if they are charged with a felony or Class A misdemeanor and following a hearing. 725 ILCS 5/110-6(a) (West 2022). At the hearing, the State bears the burden of proving by clear and convincing evidence that no condition or combination of conditions would reasonably ensure the defendant's appearance in future hearings or prevent them from being charged with a subsequent felony or Class A misdemeanor. *Id.* Here, Castillo's hearing in December was to determine pretrial release for the first time under the Code. Because the court has not previously granted pretrial release, section 110-6(a) does not apply.

---

***People v. Castillo*, 2024 IL App (1st) 232315**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-CR-05346; the Hon. Margaret M. Ogarek, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Ross K. Holberg, Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Mariela Guzman, Assistant State's Attorney, of counsel), for the People. |

---